Mr. Monk. May it please the court, Brandon Monk for Appellant James Gauthier. This is being pilot retaliation case where Goodyear fired my client two days after he refused to change his written statement about a hydrocarbon leak that triggered regulatory violations with TCEQ for Goodyear. We're here after defendant's motion for summary judgment was granted and we're seeking reversal and remand. I'd like to begin by talking about the timeline and then I'm going to move into the issues that the trial court gave for the dismissal and discuss those with some case law and some statutes. But the critical dates are the June 12th date is where we really begin this. This is the date of the hydrocarbon leak. Mr. Gauthier is a board operator. He notices that there's some equipment that's malfunctioning. It's not getting proper reads and things like that. There's a process whereby him and his team which includes a team lead who is Cooper and another individual named Bergeron. Gauthier being the individual on the board would have to remain with the board but he could call on these other team members to go out and investigate to determine if there was something on the board that maybe was not being detected properly but there was still triggering reason to investigate that they could go out and of these issues. When they would do that they would go out in the field and they would use handheld LEL meters to try to detect the hydrocarbon that might be out in the field and initially the issues on the board that Mr. Gauthier identifies he sends these folks out and they investigate they don't find any signs that there's a hydrocarbon leak and but there continue to be issues with the readings on the board, malfunctions of some sort. I think they identify later that there issues with the capacitance probe and associated with the way that this was reading out with the water levels and with the decanter but at the time they don't exactly know what the issue is they just know that something's being reported on the board and they're trying to find out if this is a leak. After some struggle with that they find that there has been a leak in one of the ditches and they identified that again by hand not through the detection system that would have been available through Gauthier at the board that was faulty and did not necessarily detect that hydrocarbon leak it detected other issues but not the leak itself. So at that time when there's a hydrocarbon leak that's detected there is a call that occurs where Cooper and my client are present it's on speakerphone and they call Garcia who is the site shift manager that offers an affidavit in the case and this is where there's a fact conflict in the case but Gauthier's position is that it was reported to Garcia that there was a hydrocarbon leak that probably more likely than not that there was a hydrocarbon leak and this came from a statement that Cooper made on the phone where my client was present. Garcia later in his affidavit denies that he's told at that time that there was a hydrocarbon leak. There's mention. Let me ask you sir by the time that Gauthier was asked if he was willing to change his statement as I understand it Goodyear had already reported their environmental violation to the Texas Commission. The actual timing of the reporting for the initial notification from Goodyear is June 15th and that's in the record at 302. The date that they asked Gauthier to change the statement is a little bit in conflict in the record. The written statement that Gauthier gives is dated June the 14th and it's June the 14th that that they ask him to change the statement. There's a later statement that's dated June the 16th where they claim that Gauthier has signed a set of notes that HR Beville has prepared. Gauthier denies that he signs those notes at all and says that they've presented those notes as being signed by him and they were never signed by him. They're interesting in that there's some different handwriting in on those notes that it deals with this specific issue about what the site shift manager Garcia was told but the report from Goodyear is the 15th the handwritten notes of the 14th. They go on and they have to make an additional final report Goodyear does on June 25th 2021. So there's an on and that's in the report. So there's an additional report that they make and the initial report that Goodyear makes on the 15th there are really two narratives that are you can see from that if you read the notes very closely and they are there's this one narrative which is there's a leak on the 12th and it's reported but then there is another narrative that slips in in the initial report that is that there is no discovery or no determination. I think they use the word determine that the leak had occurred until the 14th and this is exactly what bevel admits in her affidavit that she is going into Goodyear to try to seek clarity about which is this timeline which is Goodyear's claim he did tell and so she's actively driving at that and admits to that that's something she's looking to identifies as a timeline issue for them. So they're sorting it out but then by the time of the final report to T. C. Q. And the record at 304 they've had to go away from this theory that they didn't determine it or discovered until the 14th and that's what's critical about what they're looking to have changed. Um so the timing does get confusing. I know they've contended they've already reported by them but but not really because the 15th they've reported initially and they've floated two theories out and only later do they feel like that they because Goodyear does not change his statement have to be locked into this theory that it was the 12th and their report then on the 15th is very late right it's it's significantly more late than if it had been on the 14th and we've got this 24-hour window so that's where they're moving to but they could not get there because Goodyear would not change his statement. So in that handwritten statement that Goodyear provides that's in the record at 298 to 300 it shows really that Garcia is aware of this valve issue but also that he asked to get another stripper hot and ready and that's critical in this field because it's indicating and the Garcia does not really address that very well in his affidavit it's critical is indicating there's a serious mechanical problem with the C unit that they were dealing with and in that statement specifically Goodyear says that he told the team lead that that Cooper tells Garcia that there was probably hydrocarbon in the ditch and so it's at that point really that the report should have been made the chain of command here is that Goodyear is under team lead Cooper. Team lead Cooper actually detects and finds it with the hand meter. Cooper then tells Garcia that this leak has occurred but then later later denies that and Goodyear was present for that conversation. So it's on June 16th that the we have this date of the signing of Goodyear's notes the trial court when it deals with that says that it'll take Mr. Goodyear at his word that that probably happened on the 15th that that likely happened on the 15th of course they had already asked him to prepare his written statement and he had prepared that on the 14th and signed that and that's in the record. So on the 17th then Goodyear is terminated and the trial court says that the reasons that they give that there is no issue on summary judgment and this should not go forward to trial is they say there is no tribal issue on whether he was required to commit the legal act basically in looking for a more explicit statement from the employer in regard to change the statement or else we will fire you which Higginbotham really talks about the fact that that is not needed and then the trial court also dealt with the issue that changing the statement they didn't necessarily see as an illegal act but on that point in the record at 581 the trial court does agree that falsifying statements to avoid regulatory enforcement can constitute a criminal act and so that acknowledgment really is just back to the same fact question which we think would require reversal which is this real determination that a jury is going to have to make about you know did Goodyear report timely and were they driving at some change of that statement and was his termination as a result of that. So he's helped out a great deal by temporal proximity which is looked to in other employment contexts to provide a basis for causation and we cite to the Brown versus Walmart case on that here we have two days in terms of the temporal proximity I don't think that temporal proximity is is wholly sufficient to defeat their reasons of pretext but it is probably wholly sufficient to survive summary judgment on the causation issue but in terms of defeating pretext we also point to the that in the same circumstance Cooper and Bergeron were involved and were not terminated and in fact it was really Cooper that had identified the hydrocarbon with the LEL meter and so there's disparate treatment in terms of how Goodyear is treated and we think the thing that explains that is his refusal to change the statement and get in line so that they can make this about something they're reporting that was determined on the 14th versus determined on the 12th the the issues involving the Texas penal code that we point to I think that the court in order to deal with those and have a good understanding you have to track the definitions the definitions end up being quite broad and for example defining official proceeding is anything before a 33 and then when you deal with Texas penal code 37.10 which is tampering with the governmental record which are the crimes that we say support this illegal act that he was asked to do which is you know change your statement with the idea that the statement would be used in in this regulatory investigation and we're all aware that these internal documents that the company is preparing are eventually going to make it into the hands of TCEQ as they look into this this 37.10 argument that you make I don't think you made it earlier in the proceedings did you we did we did make it earlier but I would admit that we did not excite exactly to that definition did you argue we were we were arguing earlier that it was required by law that these documents were kept as part of the records of the internal company and that they would be turned over to the agency and so ultimately it was about that broader concept and not about drilling down into the definitions until until later on but that issue was you know it was raised also by their briefing I think is why we raised it in reply there is discussion about with those provisions that in particular I think the trial court looked at some of those definitions as well in her decision and just really took that in a different direction on facts stating that there was no no indication that those internal documents were going to go into the investigation and and ultimately you know this governmental record definition includes documents required by law to be kept by others for information of government and that's the definition that we point to the other interesting case on that point is the Morales versus semi flight case which is it involved a request to sign an internal document and just sign a blank document and that then the company would be able to write in whatever they wanted to and that was on a document that it was internal but that everyone knew could be used in an FAA investigation so similarly the court found that document could support the claim that we're talking about and of course you know with respect to the Higginbotham case the court looked more towards an explicit requirement that there was a request to commit a crime Guthrie and his testimony and points that this is in the record at 400 to 401 he mentions that there was an environmental manager that was saying that the company would be fined this is during the investigation he's talking about well that also didn't Higginbotham involved a lot more intense effort by the employer to with Higginbotham one question here right correct yes I do agree with with that Higginbotham allegedly I think involved a series of training and such as that and some speeches where they were rehearsing coaching him on what correct that's absolutely true and while that's not true in this case there's nothing that really indicates that there has to be that you know type of severe pervasive or overtime conduct it's really Higginbotham deals with the fact that it's about this decision that the employer puts the employee in which is they're being asked to commit the illegal act and just by being asked to commit the legal act they're being put in this untenable position really that they'd be fired if they did not do that because they reference insubordination you know single acts of insubordination could justify termination and that's how they they sort of reason through that and I think with that reasoning it could apply in a single instance as well I'm about out of time I'll sit down thank you great you've reserved five minutes miss Edwards may it please the court Kelly Edwards counsel for the appellee the Goodyear Tire and Rubber Company the record before this court supports an affirmation of the district courts grant of summary judgment for three primary reasons each of which I will address in turn one the appellant has failed to make a showing that is sufficient to create a fact issue as to whether Goodyear required him to commit an illegal act carrying criminal penalties as required under Texas's subpoena pilot doctrine to the district court correctly concluded that Goethe a presented insufficient evidence that the sole reason Goodyear terminated his employment was his refusal to commit an illegal act and three there is no indication that the district court applied incorrect evidentiary standards in considering Goodyear's motion for summary judgment first the district court's judgment in Goodyear's favor should be affirmed because Goethe a has failed to show that Goodyear's invitation for him to amend his written statement amounted to a request that he perform an illegal act let alone that he was terminated for it while Texas's subpoena pilot decision recognizes a limited exception to the state's at will employment doctrine for now 40 years Texas courts have emphasized the narrowness of that exception and have declined countless opportunities to expand it allows a former employee a cause of action only when the employee can show that the sole reason for the termination is the employees refusal to perform an illegal act that subjected the employee to criminal penalties it is axiomatic that in order for there to be a refusal by the employee there must be a request from the employer to be in pilot itself involved a case where the employer demanded that its employee continue to illegally dump material into the water or be terminated but here this is not a case about an employee who was given the choice between committing an illegal act or being terminated this is instead a case about an employee whom the company reasonably believe to have provided misleading information in company documents to cover up his own mistake and then when given the opportunity to correct his lie double down on that misrepresentation the record evidence shows that it was that dishonesty or at least the company's reasonable belief that it was dishonest that led to go through his termination and not any request that he commit further dishonesty here Mr. Goethe alleges that the ask that Goodyear made of him was quote whether to change his statement and quote as part of an internal human resources investigation he testifies in his deposition to this three times the first at record 257 then at 259 and then at 260 and then the time he talks about it he says that the ask was things didn't match up with the time frame would you be willing to change your statement this type of question posed to an employee about whether they would like to engage in an act is far from the same as a demand to commit an act or even a request to commit an act in fact what the Texas Supreme Court has said is that an employee must be unacceptably forced to choose between risking criminal liability or being discharged from his livelihood in interpreting Sabine pilot over the years lower Texas courts have found that an employer merely requesting the employee to commit an illegal act is insufficient to meet the standard and this court has found in interpreting Texas law that an employee's subjective interpretation of the supervisor's remarks rather than a directive to commit an unlawful act cannot support a Sabine pilot claim and so even taking Mr. Goodyear's account of the exchange as true nothing about the HR representative's query about whether he wanted to change his statement meets this demanding standard even viewing the evidence in the light most favorable to Goodyear and even assuming that the changing of his statement would or could have constituted an illegal act under the circumstances he was merely given the opportunity to perform that act not required to do it and so this type of communication is insufficient to state a claim under Sabine pilot as a matter of law but even if the invitation to Goodyear to change his statement were interpreted somehow to be a directive Goodyear still hasn't identified how or why that would have been akin to him committing an illegal act Texas courts have repeatedly noted that to be actionable under Sabine pilot the alleged illegal acts must carry criminal penalties not merely civil liability or civil penalties and the district court in this case properly concluded that none of the criminal statutes Goodyear cited to supported an illegal act under the circumstances appellants brief a primary brief in this appeal doesn't identify the criminal statutes that Goodyear believes he was asked to but his underlying summary judgment briefing cited to three Texas criminal statutes and then his reply brief in this appeal sites to a fourth each of those are related to witness or document tampering or making false statements under oath critically however there is no evidence in the record to support an argument that the conduct here at issue could have violated any of those statutes there is no evidence that Goodyear made his statement or any statement under oath there is no evidence that the statement was given as part of a an official proceeding as that is defined under the law or made to law enforcement instead the only record evidence is that the statement was part of an internal investigation into the circumstances surrounding the leak there is no evidence that Goodyear directed Goethe a to make or provide false information to a government entity moreover each of the criminal statutes that Goethe a sites to require knowing conduct and this is critical because Goethe a admitted that he did not know at the time whether the company had to report the leak to the TCEQ at all and that's at record 267 also critically based on the undisputed facts in the record the meeting at issue occurred after the company's TCEQ report was submitted and there is nothing in the record suggesting that the company could amend the report after the fact let alone that it did or it tried to the record 304 which my friend on the other side sites as the final report is dated June the 15th there's no reference to a 25th date in that report as he has represented and as such there is no evidence that the conversation between human resources and mr. Goethe a occurred during a regulatory investigation as Goethe a contends and so because Goethe a has failed to demonstrate the existence of a genuine issue of material fact for trial as to the issue of whether Goethe a or Goodyear required him to commit an illegal act for carrying criminal penalties the district court properly granted summary judgment second and most importantly or also importantly even if Goethe a did have evidence that Goodyear's termination was motivated somehow by his refusal to commit an illegal act the district court still correctly concluded that he presented no evidence that his refusal to change his statement was Goodyear's sole reason for terminating him the Texas Supreme Court has made it abundantly clear that an employer is not liable under Sabine pilot where the termination is based on both a refusal to commit an illegal act and a legitimate reason for the termination the undisputed record evidence indicates that Goodyear made the termination decision because it found that Goethe a committed two very serious violations one he failed to timely report the hydrocarbon leak and two he made material representations through work orders that he submitted after the fact even Goethe a admits that he was terminated in part because the company felt he did not timely report the leak and that's at record 263 it is therefore undisputed that Goodyear had at least one legitimate reason to terminate Goethe a's employment and for that reason alone he cannot show that he was terminated solely for refusing to commit an illegal act which is fatal to his Sabine pilot claim finally there's no indication that the district court applied incorrect legal standards or evidentiary standards in evaluating Goethe a's claims with regard to causation Goethe a relies on his argument of temporal proximity between the conversation at issue and his termination but in a case like this one where the evidentiary standard is but for causation the Fifth Circuit has repeatedly stated that temporal proximity alone cannot be sufficient proof of causation with respect to his purported evidence of disparate treatment Goethe a's comparator arguments are also flawed in several respects first he cites no authority that evidence of disparate treatment can prove causation in a Sabine pilot case but even if it could or even if it does while Goethe a points to to the two outside operators Cooper and Bergeron as his comparators the record evidence does not support his arguments regarding them while both Cooper and and Bergeron also failed to timely report the gas leak they were both severely disciplined for that failure and critically Goethe a's arguments regarding them make no logical sense because Goethe a testified in his deposition that he believes they too were asked to change their statements and refused yet they were not terminated that's at record 260 that admission alone undermines his reliance on comparator evidence Goethe a also extensively argues without authority or citation that the district court failed to draw reasonable inferences in his favor but in doing so he misstates the applicable legal standard and that is that a court's duty is to draw reasonable inferences in the non-movements favor at the summary judgment stage it doesn't require the court to extend wholly unreasonable inferences or inferences amounting to more to mere speculation or conjecture Goethe a asks this court not just to draw reasonable inferences in his favor but to draw all inferences including those supported only by speculation and so the district court properly found that Goethe a's unsupported assertions and argument are too speculative to require her to grant him those inferences for all of those reasons we believe that the district court's grant of summary judgment should be affirmed unless the panel has questions I will yield the rest of my time thank you thank you mr. monk you've got five minutes thank you I want to begin by looking at these issues in the record associated with the final report date because I think this is just a factual issue again that has to be resolved by the trier of fact the record dates for the both if you look at the times that they're looking at they're going to claim to you that it happened on the initial report was June 15th at the exact minute and second and that the final notification was on July on June 15th 2021 at the exact minute and second that the initial notification was made that's not reasonable if you look at the top of those documents and the record in particular 304 in the record it has the dates that they were submitted and it says the June 26th date for this final notification so that's a correction just factually that's very important because they do go on and make a change to this dual narrative and I think that shows up most clearly in those documents and that's the focus of what they're asking him to change and and it clearly is what happens on this final report is they carry over the information verbatim from the initial notification but that's not the date that the final report was sent that date that the final report was sent is at the of that record page and it says this this later June date I think that's very important in terms of the timing of an understanding the allegations the statements from Gauthier are more extensive as well in the record about what what he saw was going on and the record at 263 he says I believe the hard hydrocarbon alarm was not reported to see TCEQ in time and in that same discussion he mentions that the site shift manager denies that he was told that the leak was reported but Gauthier has stood his ground on that point throughout through all of this where it shows up in the record that he has stood his ground is both in his written statement which he says quote this is at 299 in the record team TL told SSM that he felt we had probably put some HC to the ditch and then in the record at 312 these are the notes that bevel claims that she had Gauthier signs but he denies it says in those notes quote TL told SSM felt like we had put HC in the ditch in quote T and then another quote TL laughs when he's stressed that's in the record at 312 again so those are the statements that Gauthier stood by and would not change with respect to a statement and those are the the statements that eventually have to leave in the final report because they're not allowed to keep this narrative about the 14th being the date that they determined that this leak had occurred they should have report on the 12th and the site shift manager knew about that the work orders that Gauthier puts in there in no way fabricated he testifies in the record at 384 that they were commonplace and common practice whenever you had hydrocarbon alarms that went off and so this was ordinary course of business to have those checked out and calibrated because there had been something on the on the panel that was not reading right even at that time if he did not know the exact cause of what had put hydrocarbon in the ditch he knew that there need to be work orders that were put in and his work orders were put in before he left that shift on the 12th was additional record evidence that he was making this report on the 12th and that it was significant they were involving I and E and mechanical to make these repairs they were setting up another unit to go forward because everyone was aware that there was an issue with this one that eventually they found I had put hydrocarbon into the ditch hit the real test in this is whether a reasonable employee would understand that these hydrocarbon links have to be timely reported go they knew that much he didn't have to know all the intricacies of the criminal statute specifically are those elements but he knew that there was a fine that was an issue that they were investigating and that HR is trying to have you admit something that's not true and he does not do that and he is terminated within those two days and so we appreciate the court's time on this case thank you mr. monk the case is submitted and the court is now